UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-519-MOC
(3:16-cr-203-MOC-DCK-1)

| | |
|---|---|
| BYRON LEE TATE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) ORDER |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (Doc. No. 1).

**I.     BACKGROUND**

Petitioner was indicted in the underlying criminal case for: Count (1), possession of a firearm by a convicted felon; Count (2), possession with intent to distribute a controlled substance; and Count (3), unlawfully using and carrying a firearm during and in relation to a drug trafficking crime. (3:16-cr-203 (CR) Doc. No. 1). Petitioner agreed to plead guilty to Count (1) and the Government agreed to dismiss Counts (2) and (3). (CR Doc. No. 16). In the written Plea Agreement, Petitioner acknowledged that Count (1) is punishable by up to 10 years' imprisonment and three years of supervised release, but that he would face enhanced minimum and maximum sentences if he was found to have three prior convictions pursuant to 18 U.S.C. § 924(e). (CR Doc. No. 16 at 2). The parties agreed to jointly recommend the following findings with regards to the U.S. Sentencing Guidelines: the base offense level would be 20 pursuant to § 2K2.1(a)(4)(A); four levels would be added for specific offense characteristics pursuant to § 2K2.1(b)(6)(B); the plea would be considered timely pursuant to § 3E1.1(b); and the Armed Career Criminal Provision in

1

§ 4B1.4 would apply if the Court determines that Petitioner's criminal history satisfies that section notwithstanding any other recommendation in the plea agreement. (CR Doc. No. 16 at 2). The parties remained free to seek a departure or variance pursuant to § 5C1.1. (Id.). The Plea Agreement provides that Petitioner stipulated to the existence of a factual basis to support his guilty plea as required by Rule 11(b)(3), that he read and understood the written Factual Basis that was filed with the Plea Agreement, and that the Factual Basis may be used by the Court and Probation Office to determine the applicable advisory guideline range or the appropriate sentence unless the Factual Basis itself notes that Petitioner has specifically reserved the right to object to a particular fact or facts. (CR Doc. No. 16 at 4). Petitioner expressly waived his rights to contest his conviction and/or sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. (CR Doc. No. 16 at 5).

The written Factual Basis provides, in part:

> On April 4, 2016, at 12:04 p.m., CMPD/TFO Detective Jon Tobbe and other officers responded to a domestic call for service…. CMPD Officer Joshua Braswell rode his motorcycle behind the apartment to watch if anyone came out the back door. When Braswell went behind the apartment he saw a black male with long dreadlocks (later identified as defendant Byron Tate), wearing all black and carrying a black back pack. When Tate saw officer Braswell he began to run toward a wood line. Officer Braswell chased after Tate on his motorcycle, and saw defendant throw down the back pack as he rounded a corner. Braswell stopped and stood by the back pack, and Tate ran away, but was apprehended a short time later by other officers.
>
> TFO Tobbe approached Officer Braswell, and could smell an odor of marijuana coming from inside the backpack that was abandoned by Tate. When TFO Tobbe held the bag, he could smell an even stronger odor of marijuana coming from the bag. TFO Tobbe opened the bag and observed a Walmart bag filled with what he identified as marijuana. The bag of marijuana was sitting on top of a firearm. Tobbe found paperwork with Byron Tate's name on it in the front pocket of the backpack. Two other documents with defendant's name on it were also found in the back pack.
>
> The firearm was a Hi Point, Model C9, 9mm, semi-automatic pistol. The pistol was loaded with five 9mm rounds in the magazine. The Hi Point, Model C9,

2

9mm semiautomatic pistol was manufactured outside of North Carolina, and traveled in and affected interstate commerce.

The suspected marijuana was analyzed by the CMPD Lab, and was determined to be in fact marijuana with a weight of 107.97 grams (approximately 3.8 oz).

TFO Tobbe and Officer VanHemel spoke with a witness who told them defendant Byron Tate was observed in possession of a firearm prior to the arrival of the police. TFO Tobbe collected a 9mm bullet from the floor of the main hallway of the witness's apartment. The collected 9mm round is of the same caliber as the Hi Point pistol found in the backpack.

Defendant was apprehended near the scene, and was arrested.

Defendant is a convicted felon. Defendant has not been pardoned or had his civil rights restored, and was prohibited from possessing a firearm on April 4, 2016.

(CR Doc. No. 17 at 1-2)

Petitioner stated under oath at the Rule 11 hearing that, after consulting with his attorney, he wanted the Court to accept his guilty plea, he was not under the influence, and he received a copy of the Indictment and discussed it with counsel (CR Doc. No. 18 at 1) (Acceptance). Petitioner admitted that he spoke to counsel about how the sentencing guidelines may apply to his case, the Court could would not be able to determine the applicable sentencing guidelines range until after the PSR has been prepared, Petitioner may receive a sentence that is lower or higher than that called for by the guidelines, and Petitioner would still be bound by his plea even if the sentence was more severe than expected or if the Court did not accept the Government's sentencing recommendation. Petitioner stated that he understood the rights he was waiving by pleading guilty including the right to plead not guilty, have a speedy trial, summon witnesses, and confront witnesses against him. He also stated that he understood that, that if he went to trial, he would have the assistance of a lawyer, would not be required to testify, would be presumed innocent, and the burden of proof would be on the Government. (CR Doc. No. 18 at 2). Petitioner stated that he understood that he was waiving these rights by pleading guilty, that there would be no trial, and

3

the only other hearing would be for sentencing. (CR Doc. No. 18 at 3). Petitioner admitted his guilt of the count to which he was pleading guilty, that he understood the terms in the plea agreement and agreed with them, that he was waiving his appellate and post-conviction rights, and that he read the Factual Basis, understood it, and agreed with it. He stated that nobody threatened, intimidated, or forced him to plead guilty, or made any promises of leniency or a light sentence to induce him to plead guilty. He stated that he had enough time to discuss possible defenses with counsel and was satisfied with counsel's services.

The Presentence Investigation Report (PSR) calculated the base offense level as 20 because Petitioner possessed a firearm subsequent to sustaining a conviction for a controlled substance offense pursuant to U.S. Sentencing Guidelines § 2K2.1(a)(4)(A), that is, conspiracy to possess with intent to distribute cocaine base, case number 3:01-cr-185. (CR Doc. No. 25 at ¶ 20). Four levels were added because Petitioner possessed the firearm in connection with another felony offense, possession with intent to sell and deliver marijuana, pursuant to Guidelines § 2K2.1(b)(6)(B). (CR Doc. No. 25 at ¶ 21). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 21. (CR Doc. No. 25 at ¶¶ 27-29).

The PSR's criminal history section scored the following prior convictions: indecent liberties with a child (Mecklenburg Superior Court 98CRS39693); conspiracy to possess with intent to distribute cocaine base (WDNC 3:01-cr-185); and possession of up to ½ ounce of marijuana (Mecklenburg District Court 12CR32148). (CR Doc. No. 25 at ¶¶ 41, 43, 45). This resulted in seven criminal history points and a criminal history category of IV. (CR Doc. No. 25 at ¶¶ 47-48). The resulting advisory guidelines range was between 57 and 71 months' imprisonment and between one and three years of supervised release. (CR Doc. No. 25 at ¶¶ 88,

4

91). Defense counsel filed objections to the PSR that did not result in any change to the advisory guideline range. See (CR Doc. Nos. 24, 25).

In a Judgment entered on September 1, 2017, Petitioner was adjudicated guilty and sentenced at the bottom of the guidelines range to 57 months' imprisonment followed by three years of supervised release. (CR Doc. No. 28). Petitioner filed, then voluntarily dismissed, a direct appeal. (CR Doc. No. 35).

Petitioner filed a § 2255 Motion to Vacate in the instant case on September 18, 2018.[1] (Doc. No. 1). The Motion to Vacate was not signed under penalty of perjury and Petitioner was given the opportunity to resubmit it. (Doc. No. 2). Petitioner refiled the verified petition and it was docketed as the Amended § 2255 Motion to Vacate.[2] (Doc. No. 4). He appears to argue (renumbered): (i) the Court's application of Guidelines § 2K2.1(b)(6)(B) based on the connection between his firearm possession and marijuana offenses constitutes selective prosecution; (ii) the Government breached the Plea Agreement by failing to cite 18 U.S.C. § 924(a)(2), which sets out the penalty for the § 922(g) offense, in the Indictment or Plea Agreement; (iii) the Sentencing Guidelines are unconstitutionally vague; (iv) his conviction under § 922(g)(1) violates the Second Amendment; (v) his prior drug convictions are not serious drug offenses under the Armed Career Criminal Act (ACCA); (vi) his prior conviction for indecent liberties, for which he received three criminal history points, was based on insufficient evidence and is clearly erroneous; and (vii) counsel was ineffective for failing to raise the foregoing arguments. Petitioner seeks a hearing, the restoration of his ability to possess a firearm, and resentencing. (Doc. No. 4); see (Doc. No. 1-3).

---

[1] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prison mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

[2] It appears to that the Memorandum referred to in the Amended § 2255 Motion to Vacate is the Memorandum in support of the original § 2255 Motion to Vacate, (Doc. No. 1-3).

5

The Government filed a Response, (Doc. No. 6), arguing that Claims (i) through (vi) were waived by Petitioner's guilty plea, are procedurally defaulted from § 2255 review, and are meritless, and that Claim (vii) should be denied because counsel was not ineffective for failing to raise these meritless claims.

Petitioner did not reply.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b). After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

**(1) Waiver**

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

An appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). The Fourth Circuit does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement. See United States v. Lemaster, 403 F.3d 216, 200 (4th Cir. 2005). There are narrow exceptions to the enforceability of plea waivers such that "even a knowing and voluntary waiver of the right to appeal cannot bar the defendant from obtaining appellate review of certain claims." United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005). For instance, because "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court[,] ... a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Marin, 961 F.2d at 496 (emphasis added).

The Court conducted a thorough Rule 11 colloquy and concluded that Petitioner was pleading guilty knowingly and voluntarily with a full understanding of his plea's consequences, including the appellate and post-conviction waivers. Petitioner's plea was freely and voluntarily entered and any suggestion to the contrary is rejected. Blackledge v. Allison, 431 U.S. 63, 74

(1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., Lemaster, 403 F.3d at 221 ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

Petitioner's attempt to recast Claims (i) and (ii) as claims of prosecutorial misconduct, to avoid his post-conviction waiver, are unavailing. Claim (i), which Petitioner characterizes as selective prosecution, actually addresses the application of U.S. Sentencing Guideline § 2K2.1(b)(6)(B). This claim cannot be reasonably characterized as a selective prosecution claim, *i.e.*, an "assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." See United States v. Armstrong, 517 U.S. 456, 463 (1996). The guideline calculation issue about which Petitioner complains occurred well after the charging decision and is a challenge to the application of the Sentencing Guidelines which is not cognizable on § 2255 review and is meritless. See Section (3)(i), *infra*. Claim (ii), which Petitioner characterizes as breach of the Plea Agreement is an argument that the Indictment and Plea Agreement fail to cite 18 U.S.C. § 924(a)(2). Petitioner has failed to explain how the omission of that statutory citation from the Indictment and Plea Agreement constitutes breach of the Plea Agreement or otherwise involves prosecutorial misconduct. Indeed, a review of the record reveals that no breach or misconduct occurred and that this claim is also meritless. See Section (3)(ii), *infra*.

Petitioner's knowing and voluntary plea waived all non-jurisdictional defects. No error, such as sentencing beyond the statutory maximum, occurred that would warrant setting aside the

8

waiver. See Section (3), *infra*. Petitioner's claims of substantive error, Claims (i)-(vi), were therefore waived by Petitioner's knowing and voluntary guilty plea.

**(2)     Procedural Default**

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). With regards to cause and prejudice, a petitioner must demonstrate: (1) the existence of cause for a procedural default that turns on something external to the defense; and (2) actual prejudice resulting from the errors of which he complains. United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010). To establish cause based upon ineffective assistance of counsel, a petitioner must show that the attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Actual prejudice is then shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray, 477 U.S. at 494). In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a petitioner must show actual innocence by clear and convincing evidence. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

9

Petitioner voluntarily dismissed his direct appeal and, accordingly, failed to exhaust any of his substantive claims for relief, Claims (i) through (vi). Assuming *arguendo* that Petitioner has established cause to excuse the procedural default of these claims, he is unable to demonstrate prejudice because the claims are meritless. See Section (3), *infra*. Therefore, Claims (i) through (vi) are procedurally defaulted from § 2255 review and will be dismissed.

**(3)   Merits**

(i)   Petitioner contends that the application of a four-level specific offense characteristic under U.S. Sentencing Guidelines 2K2.1(b)(6)(B) for possession of a firearm in connection with another felony offense, was erroneous.

Petitioner complains that the four-level enhancement in § 2K2.1(b)(6)(B) does not apply to his case. As a preliminary matter, Sentencing Guideline application errors cannot be raised in a § 2255 proceeding absent "extraordinary circumstances." United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999). No such extraordinary circumstances are present in the instant case, and therefore, this claim is not cognizable on § 2255 review.

Further, the record indicates that no Guideline application error occurred. Section 2K2.1(b)(6)(B) provides that the offense level is increased by four levels if a defendant "used or possessed any firearm or ammunition in connection with any felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense…." U.S.S.G. § 2K2.1(b)(6)(B) (2016). "Another felony offense" for purposes of this subsection means "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained. U.S.S.G. § 2K2.1, app. note 14(C).

Petitioner was assessed a four-level special offense characteristic pursuant to § 2K2.1(b)(6)(B) because he possessed a firearm in connection with "another felony offense," i.e., possession with intent to sell and deliver marijuana. (CR Doc. No. 25 ¶ 21); (CR Doc. No. 1 at 1-2). The marijuana offense at issue is a federal offense punishable by not more than five years in prison. See 21 U.S.C. § 841(a)(1), (b)(1)(D). Therefore, that offense qualifies as "another felony offense" for purposes of § 2K2.1(b)(6)(B) and the four-level specific offense characteristic was correctly applied.

Moreover, any suggestion that the application of § 2K2.1(b)(6)(B) rendered Petitioner's guilty plea involuntary is conclusively refuted by the record. Petitioner agreed, as part of his knowing and voluntary guilty plea, that a four-level specific offense characteristic would be applied pursuant to § 2K2.1(b)(6)(B). (CR Doc. No. 16 at 2). Therefore, to the extent that Petitioner attempts to suggest that application of § 2K2.1(b)(6)(B) rendered the plea involuntary, that claim is conclusively refuted by the record.

Therefore, this claim is not cognizable on § 2255 review, is conclusively refuted by the record, and will be denied.

(ii) Petitioner contends that the Indictment and Plea Agreement's failure to cite 18 U.S.C. § 924(a)(2) as the source of his sentencing exposure for the § 922(g) offense, was erroneous.

An indictment must contain the elements of the offense charged, fairly inform the defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense. United States v. Daniels, 973 F.2d 272, 274 (4th Cir. 1992). The Indictment in the instant case was sufficient because it cited § 922(g)(1) and described the date and conduct at issue. See (CR Doc. No. 1 at 1); Daniels, 973 F.2d at 274. That the Indictment

11

failed to cite § 924(a)(2), which provides that a § 922(g) offense is punishable by up to 10 years' imprisonment, is irrelevant and did not render the Indictment deficient or erroneous in any way.

Nor was § 924(a)(2) required to be cited in the Plea Agreement. The validity of a guilty plea is governed by Rule 11, which requires a defendant to understand the nature and consequences of his plea, including his sentencing exposure. Fed. R. Crim. P. 11(b)(1); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). The Plea Agreement and Rule 11 hearing in the instant case clearly and accurately set forth Petitioner's sentencing exposure for the § 922(g) offense charged in Count (1) as 10 years' imprisonment, a $250,000 fine, and no more than three years of supervised release. (CR Doc. No. 16 at 2). The Plea Agreement also correctly set forth the potential maximum and minimum mandatory penalties that Petitioner would face if he qualified for enhanced sentencing pursuant to § 924(e). Id. Nothing required the Plea Agreement to cite § 924(a)(2) as the source of the non-enhanced penalty for the § 922(g) violation. Its omission from the Plea Agreement did not render the sentencing exposure information defective in any way.

To the extent that Petitioner suggests that the Indictment and Plea Agreement's failure to cite § 924(a)(2) somehow rendered his plea involuntary, this claim is conclusively refuted by the record. The Plea Agreement sets forth the potential penalties for Petitioner's conviction which Petitioner admitted, under oath at the Rule 11 hearing, that he understood. Any suggestion that the failure to cite § 924(a)(2) in the Indictment and/or Plea Agreement somehow rendered his plea involuntary is conclusively refuted by the record and will be rejected. Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221. Therefore, this claim will be denied.

(iii) Petitioner appears to argue that the U.S. Sentencing Guidelines are unconstitutionally vague.

This claim is foreclosed by the U.S. Supreme Court, which has held that advisory sentencing guidelines are not subject to vagueness challenges. United States v. Beckles, 137 S. Ct. 886, 890 (2017). Therefore, to the extent that Petitioner attempts to challenge the U.S. Sentencing Guidelines for vagueness, this claim is meritless and will be denied.

(iv) Petitioner contends that the § 922(g)(1) conviction violates the Second Amendment because it prevents him from possessing a firearm.

Felon in possession laws such as § 922(g)(1) are "presumptively lawful regulatory measures." District of Columbia v. Heller, 554 U.S. 570, 626-27 n.26 (2008). The Fourth Circuit has held that § 922(g) is constitutional on its face. United States v. Moore, 666 F.3d 313 (4th Cir. 2012). A litigant claiming that an otherwise constitutional enactment is invalid as applied to him "must show that his factual circumstances remove his challenge from the realm of ordinary challenges." Moore, 666 F.3d at 319. Petitioner cannot demonstrate that he is a law-abiding responsible citizen such that he could raise a challenge to the statute as applied to him because he admitted, as part of his knowing and voluntary guilty plea, that he is guilty of violating § 922(g)(1) and that he is a convicted felon. Id. at 320; (CR Doc. No. 16); see also (CR Doc. No. 17) (Factual Basis). Accordingly, Petitioner's facial and as-applied challenges to § 922(g)(1) are meritless and will be denied.

(v) Petitioner challenges his prior offenses' qualification as serious drug offenses under ACCA.

This claim is based on a faulty factual premise. Petitioner was not sentenced under ACCA and, therefore, whether or not Petitioner's prior convictions are serious drug offenses under ACCA, is irrelevant.

(vi) Petitioner attempts to challenge the validity of his prior state conviction for indecent liberties with a minor, for which he was scored three criminal history points in the PSR.

Petitioner's attempt to challenge his prior state conviction is not cognizable in this § 2255 proceeding. A § 2255 petition must be "in custody" under the sentence of a federal court. 28 U.S.C. § 2255(a). Petitioner attempts to challenge his prior state conviction for which he is no longer in custody, and which he does not claim has been vacated. Such a challenge does not qualify for § 2255 review. See generally Daniels v. United States, 532 U.S. 374 (2001) (a federal prisoner may not attack a predicate state conviction through a § 2255 petition challenging an enhanced federal sentence, except if the priors were obtained in violation of the right to counsel; "[n]o other constitutional challenge to a prior conviction may be raised in the sentencing forum."); United States v. Gadsen, 332 F.3d 224, 228 (4th Cir. 2003) ("the Supreme Court instructed petitioners … to attack the predicate felony conviction itself, either in state court or through federal habeas review, rather than attacking it indirectly by seeking to obviate the effect it has on the sentencing process for another, recitivist, conviction" and "litigants should not bypass state courts to litigate the facts underlying their state convictions during challenges to a federal sentencing determination.").

Further, Petitioner's attempt to challenge his prior state conviction is in support of an argument that the U.S. Sentencing Guidelines were erroneously applied to his case is a challenge to the application of the advisory guidelines, and such cannot generally be raised in a § 2255 proceeding. See Pregent, 190 F.3d at 283-84.

Even if this claim were properly before the Court, it fails to support § 2255 relief. Petitioner contends that: DNA testing confirmed that he is not the father of the child who was born to the victim of the indecent liberties violation; the conviction was based on insufficient evidence and is

14

more than 18 years old; "scientific proof"[3] establishes that the charge was clearly erroneous; and the conviction was consolidated with a 1999 conviction for possession with intent to sell and deliver cocaine. (Doc. No.1-3 at 14-15). The circumstances surrounding the indecent liberties conviction are set forth in the PSR, including that Petitioner pleaded guilty to having sex with a 13-year-old girl when he was 20 years old on April 15, 1998 and that this act resulted in pregnancy resulting in the birth of a child. (CR Doc. No. 25 at ¶ 41). Pursuant to Objections filed by defense counsel, the final PSR reflects that Petitioner "reports [that] DNA testing ultimately confirmed that [Petitioner] was not the father of the child." (CR Doc. No. 25 at ¶ 41); (CR Doc. No. 24). Petitioner's allegations that the age of the conviction and the fact that DNA evidence later determined that the offense did not result in a pregnancy fail to demonstrate that the conviction was improperly included in the PSR's criminal history section. (CR Doc. No. 25 at ¶ 41). Petitioner appears to suggest that the indecent liberties conviction was improperly scored twice because it was consolidated for judgment with a cocaine conviction, but this claim is conclusively refuted by the record. The PSR reflects that the indecent liberties conviction was consolidated for judgment with case number 98CRS36655 for possession with intent to sell and deliver cocaine.[4] (CR Doc. No. 25 at ¶¶ 40, 41). No double-counting occurred because Petitioner was not assessed any criminal history points for the cocaine offense. (CR Doc. No. 25 at ¶ 40).

Petitioner's claim amounts to an opinion that the indecent liberties conviction should not have been assessed three criminal history points in the PSR. However, that argument is not cognizable and is completely unsupported by the record or any evidence. Therefore, Petitioner has

---

[3] Petitioner fails to identify any "scientific proof" other than the DNA evidence.
[4] Petitioner's contention that the indecent liberties conviction was consolidated with a "1999" conviction for possession with intent to sell and deliver cocaine is mistaken. (Doc. No. 1-3 at 15); see generally (CR Doc. No. 25).

15

Case 3:16-cr-00203-MOC-DCK   Document 57   Filed 10/26/20   Page 15 of 18

failed to set forth a cognizable § 2255 claim with regards to scoring his prior indecent liberties conviction.

(vii)    Finally, Petitioner alleges that counsel was ineffective for failing to raise Claims (i) through (vi) on his behalf.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). To satisfy Strickland's prejudice prong, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated in part on other grounds*, 218 F.3d 310 (4th Cir. 2000).

None of the claims of error that Petitioner has raised is meritorious. See Section (3)(i)-(vi), *supra*. Counsel cannot be deemed ineffective for failing to raise these meritless claims and, even if counsel had done so, there is no reasonable probability that a different outcome would have

16

resulted. See generally Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."); Lockhart v. Fretwell, 506 U.S. 364, 374 (1993) (a defendant is not prejudiced if his counsel fails to make an objection that is "wholly meritless under current governing law").

Any suggestion that Petitioner's guilty plea was not freely and voluntarily entered is conclusively refuted by the record. See Sections (1), (3)(i)-(ii), *supra.* Moreover, even if Petitioner could demonstrate that counsel somehow performed deficiently, he cannot demonstrate prejudice because he seeks only sentencing relief and he does not allege that he would not have pleaded guilty absent counsel's alleged misadvice. See Hill v. Lockhart, 474 U.S. 52, 59 (1985) (to satisfy Strickland's prejudice prong in the context of an involuntary guilty plea, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Any such claim at this juncture would be contradicted by the statements he made when pleading guilty, *inter alia*, that he is in fact guilty of the offense to which he pleaded guilty. Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

Therefore, Petitioner's claims of ineffective assistance of counsel are meritless and will be denied.

### IV. CONCLUSION

For the foregoing reasons, the Court will dismiss and deny Petitioner's Amended § 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED that:**

1. Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 3), is **DISMISSED** and **DENIED**.

17

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: October 26, 2020

*[Signature]*

Max O. Cogburn Jr.
United States District Judge